IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF IOWA
CENTRAL DIVISION

ELIZABETH CORWIN,

    Plaintiff,

vs.

CAROLYN W. COLVIN,
Commissioner of Social Security,

    Defendant.

No. C16-3001

REPORT AND RECOMMENDATION

## TABLE OF CONTENTS

*I.*    *INTRODUCTION* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

*II.*    *PROCEDURAL BACKGROUND* . . . . . . . . . . . . . . . . . . . . . 2

*III.*    *PRINCIPLES OF REVIEW* . . . . . . . . . . . . . . . . . . . . . . . . 3

*IV.*    *FACTS* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5
    *A.*    *Corwin's Education and Employment Background* . . . . . . . . . . . . 5
    *B.*    *Administrative Hearing Testimony* . . . . . . . . . . . . . . . . . . . . 5
        *1.*    *Corwin's Testimony* . . . . . . . . . . . . . . . . . . . . . . . . 5
        *2.*    *Vocational Expert's Testimony* . . . . . . . . . . . . . . . . . . . 6
    *C.*    *Medical Evidence Pertinent to Objections Raised by Corwin* . . . . . . . 7

*V.*    *CONCLUSIONS OF LAW* . . . . . . . . . . . . . . . . . . . . . . . . 8
    *A.*    *ALJ's Disability Determination* . . . . . . . . . . . . . . . . . . . . . 8
    *B.*    *Objections Raised by Claimant* . . . . . . . . . . . . . . . . . . . . 10
        *1.*    *Credibility Determination* . . . . . . . . . . . . . . . . . . . . 11
        *2.*    *Dr. Johnson's Opinions* . . . . . . . . . . . . . . . . . . . . 14
        *3.*    *RFC Assessment* . . . . . . . . . . . . . . . . . . . . . . . 17
    *C.*    *Reversal or Remand* . . . . . . . . . . . . . . . . . . . . . . . . . 19

*VI.*    *CONCLUSION* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

*VII.*    *RECOMMENDATION* . . . . . . . . . . . . . . . . . . . . . . . . . 20

## I. INTRODUCTION

This matter comes before the Court on the Complaint (docket number 3) filed by Plaintiff Elizabeth Corwin on January 5, 2016, requesting judicial review of the Social Security Commissioner's decision to deny her application for Title II disability insurance benefits. Corwin asks the Court to reverse the decision of the Social Security Commissioner ("Commissioner") and order the Commissioner to provide her disability insurance benefits. In the alternative, Corwin requests the Court to remand this matter for further proceedings.

## II. PROCEDURAL BACKGROUND

Corwin filed her application for disability benefits on December 28, 2012, alleging disability due to left shoulder problems, cervical spine problems, and mood disorders.[1] She alleged she became disabled on January 1, 2011.[2] Her application was denied upon initial review, and on reconsideration. On June 25, 2014, Corwin appeared via video conference with her attorney before Administrative Law Judge ("ALJ") David G. Buell for an administrative hearing.[3] In a decision dated September 2, 2014, the ALJ denied Corwin's claim. The ALJ determined Corwin was not disabled and not entitled to disability insurance benefits because she was functionally capable of performing work that exists in significant numbers in the national economy. Corwin appealed the ALJ's

---

[1] *See* Administrative Record at 215. The record does not contain Corwin's application. Instead, the record contains the Social Security Administration's "Application Summary for Disability Insurance Benefits" form which was not filed until May 9, 2013, the day after her application was denied on initial review. *See* Administrative Record at 215; *see also id.* at 119 (initial review determination). The application summary filed on May 9, 2013 does indicate that Corwin protectively filed her claim for disability insurance benefits on December 28, 2012. *Id.* at 215.

[2] At the administrative hearing, Corwin amended her alleged disability onset date to November 1, 2012. *See* Administrative Record at 74 (ALJ's decision); 95 (hearing transcript).

[3] At the hearing, Corwin was represented by attorney Natalie L. Ratzlaff. Prior to the appeal, the attorney of record in this case was Ms. Ratzlaff's law firm colleague, F. Anthony Mannella. On appeal, Corwin is represented by attorneys Hugh M. Field and Thomas A. Krause.

decision. On November 6, 2015, the Appeals Council denied Corwin's request for review. Consequently, the ALJ's September 2, 2014 decision was adopted as the Commissioner's final decision.

On January 5, 2016, Corwin filed the instant action for judicial review. A briefing schedule was entered on March 28, 2016. On June 28, 2016, Corwin filed a brief arguing there is no substantial evidence in the record to support the ALJ's finding that she is not disabled and she is functionally capable of performing other work that exists in significant numbers in the national economy. On July 25, 2016, the Commissioner filed a responsive brief arguing that the ALJ's decision was correct and asking the Court to affirm the ALJ's decision. On August 9, 2016, Corwin filed a reply brief. On August 10, 2016, the Commissioner filed a motion to strike Corwin's reply brief because it allegedly improperly added new evidence. *See* docket number 17. Corwin did not file a response to the motion, and on August 30, 2016, the Court granted the Commissioner's motion, striking Corwin's reply brief filed on August 9, 2016, in accordance with Local Rule 7.f. *See* docket number 18. Also, on August 9, 2016, Judge Leonard T. Strand referred this matter to a magistrate judge for issuance of a report and recommendation pursuant to 28 U.S.C. § 636(b)(1)(B).

Additionally, on June 14, 2016, both parties filed together a joint statement of facts addressing the case's procedural history, testimony from the administrative hearing, and Corwin's medical history. *See* docket number 12. The parties' joint statement of facts is hereby incorporated by reference. Further discussion of pertinent facts will be addressed, as necessary, in the Court's consideration of this matter.

### *III. PRINCIPLES OF REVIEW*

The Commissioner's final determination not to award disability insurance benefits following an administrative hearing is subject to judicial review. 42 U.S.C. § 405(g). The Court has the authority to "enter . . . a judgment affirming, modifying, or reversing the

decision of the Commissioner . . . with or without remanding the cause for a rehearing." *Id.* The Commissioner's final determination not to award SSI benefits is subject to judicial review to the same extent as provided in 42 U.S.C. § 405(g). 42 U.S.C. § 1383(c)(3).

The Court "'must affirm the Commissioner's decision if it is supported by substantial evidence on the record as a whole.'" *Bernard v. Colvin*, 774 F.3d 482, 486 (8th Cir. 2014). Substantial evidence is defined as less than a preponderance of the evidence, but is relevant evidence a "'reasonable mind would find adequate to support the commissioner's conclusion.'" *Grable v. Colvin*, 770 F.3d 1196, 1201 (8th Cir. 2014). In determining whether the ALJ's decision meets this standard, the Court considers "all of the evidence that was before the ALJ, but it [does] not re-weigh the evidence." *Vester v. Barnhart*, 416 F.3d 886, 889 (8th Cir. 2005) (citation omitted). "The findings of the Commissioner . . . as to any fact, if supported by substantial evidence, shall be conclusive . . ." 42 U.S.C. § 405(g). The Court not only considers the evidence which supports the ALJ's decision, but also the evidence that detracts from his or her decision. *Perks v. Astrue*, 687 F.3d 1086, 1091 (8th Cir. 2012)

In *Culbertson v. Shalala*, the Eighth Circuit Court of Appeals explained this standard as follows:

> This standard is "'something less than the weight of the evidence and it allows for the possibility of drawing two inconsistent conclusions, thus it embodies a zone of choice within which the [Commissioner] may decide to grant or deny benefits without being subject to reversal on appeal.'"

30 F.3d 934, 939 (8th Cir. 1994). In *Buckner v. Astrue*, 646 F.3d 549, 556 (8th Cir. 2011), the Eighth Circuit further explained that a court "'will not disturb the denial of benefits so long as the ALJ's decision falls within the available 'zone of choice.'" "'An ALJ's decision is not outside that zone of choice simply because [a court] might have reached a different conclusion had [the court] been the initial finder of fact.'" *Id.* Therefore, "even if inconsistent conclusions may be drawn from the evidence, the agency's

decision will be upheld if it is supported by substantial evidence on the record as a whole." *Guilliams v. Barnhart*, 393 F.3d 798, 801 (8th Cir. 2005). *See also Cline v. Colvin*, 771 F.3d 1098, 1102 (8th Cir. 2014) ("'As long as substantial evidence in the record supports the Commissioner's decision, [the court] may not reverse it because substantial evidence exists in the record that would have supported a contrary outcome, or because [the court] would have decided the case differently.' *Krogmeier v. Barnhart*, 294 F.3d 1019, 1022 (8th Cir. 2002).").

## IV. FACTS

### A. Corwin's Education and Employment Background

Corwin was born in 1967. She is a high school graduate and attended one year of college. In the past, Corwin worked as an office nurse and a licensed practical nurse.

### B. Administrative Hearing Testimony

#### 1. Corwin's Testimony

At the administrative hearing, the ALJ inquired why Corwin stopped working in November 2012. Corwin explained:

> I, that was when I began having the neck problem, and I, I was told, you know, I was put off work due to the neck problem, started therapy first to try and resolve the problem with physical therapy, which helped for a little while, and then the neck problem didn't go away so they ended up doing surgery.

(Administrative Record at 97.) Corwin also testified that she struggled with pain and fatigue after working 5-6 hours during a shift. According to Corwin, at the end of her shift, the pain and fatigue made it difficult for her to concentrate on the paperwork and charting she needed to complete at the end of her workday. Specifically, she stated "I had trouble. Trouble concentrating. I was beginning to make some medication errors and it

5

frustrated me. I was forgetting things that needed to be remembered at work, you know, such as treatments and things."[4]

Approximately 10 months after she stopped working, Corwin had neck surgery. She testified that the surgery "resolved" her neck issues, but in January 2013, she fell in her house and started having significant left shoulder problems. Similar to her neck pain, Corwin indicated that her shoulder pain also affects her concentration and memory. Corwin also asserted she has some difficulty with depression and sleeping. Lastly, Corwin stated she is not able to perform most household duties. For example, she may start a load of laundry, but her husband or teenage son usually unloads the washer, places the clothes in the dryer, and later folds and puts away the clothes.

### 2. Vocational Expert's Testimony

At the hearing, the ALJ provided vocational expert Roger Marquardt with a hypothetical for an individual who:

> has some functional limits, namely a limit to performing light work as that term is defined in the DOT. The worker can stoop, crouch, kneel and crawl occasionally; cannot climb ladders, ropes or scaffolds in the course of her work.
>
> When it comes to handling and fingering objects with her dominant left hand, she's able to engage in those activities frequently, but no more than that. . . . No limits . . . on the right side, but the left is her dominant hand. . . .
>
> When it comes to reaching overhead, she's able to do that with both arms frequently, but no more than that.
>
> I want you to assume this worker is limited to performing only simple, routine and repetitive work, work that doesn't require any close attention to detail and doesn't require the use of any extended exertion on the job.

---

[4] Administrative Record at 98.

(Administrative Record at 112.) The vocational expert testified that under such limitations, Corwin was unable to perform her past work, but could perform the following jobs: (1) labeler or marker, (2) office helper, and (3) sales attendant. The ALJ provided the vocational expert with a second hypothetical that was identical to the first hypothetical, except the individual would be limited to sedentary work. The vocational expert testified under such limitations, Corwin could perform the following jobs: (1) order clerk, (2) addresser, and (3) escort vehicle driver.

### C. Medical Evidence Pertinent to Objections Raised by Corwin

On April 16, 2013, Corwin was referred by Disability Determination Services to Dr. Lorne A. Johnson, Psy.D., for a psychological evaluation. Dr. Johnson noted Corwin's medical history includes fibromyalgia, migraine headaches, and neck, back, and shoulder pain. Dr. Johnson also noted Corwin started therapy for depression and pain in September 2012. Dr. Johnson described Corwin's daily activities as follows:

> Mrs. Corwin's degree of daily activity has reduced significantly due to her fatigue and pain. She does have to manage getting her son to school and providing him some structure for getting his homework done and also dealing with the school. She spends most of her time resting, watching TV, or listening to music.

(Administrative Record at 510.) Dr. Johnson also noted Corwin: (1) does not perform yard work; (2) does not mop floors; (3) cannot scrub the bathroom; (4) cannot vacuum floors; (5) does not do dishes; (6) makes prepared food like frozen pizzas on a minimal basis; (7) does laundry, but it often increases her pain; and (8) can only drive short distances. On the mental status examination, Dr. Johnson determined:

> Today [Corwin] was oriented to time, place, and person. She says that on a scale of 0-10, 10 being the worst, her depression is at a 9. She appeared to have low energy and low mood. She does not enjoy much in her life currently and has very little motivation. She states that she is not sleeping well, tending to be up all night. She has a very poor appetite. She

> is moderately irritable, has zero energy, and her self-esteem is
> diminishing. She reports that she cannot concentrate, not
> being able to remember what she has read. She does have
> some suicidal ideation but does not have intent.

(Administrative Record at 511.) Cognitive test results showed "mild" cognitive impairment. Dr. Johnson diagnosed Corwin with major depressive disorder and generalized anxiety disorder. Dr. Johnson concluded:

> The result of the psychological evaluation indicates that
> Mrs. Corwin appears to have several difficulties. Her history
> of family dysfunction, abuse, car accident, and the
> deterioration of her health have created significant depressive
> and anxiety symptoms. The cognitive assessment does indicate
> some deterioration in functioning.

(Administrative Record at 511.) Based on his conclusions, Dr. Johnson offered the following opinions on Corwin's functional abilities:

> she has a moderate deficit in remembering and understanding
> instructions, procedures and locations. She has a severe deficit
> in maintaining attention, concentration, and particularly pace.
> She is moderately impaired when interacting appropriately
> with supervisors, co-workers and the public as well as using
> good judgment and responding to changes in the workplace.

(Administrative Record at 511.)

## V. CONCLUSIONS OF LAW

### A. ALJ's Disability Determination

The ALJ determined Corwin was not disabled. In making this determination, the ALJ was required to complete the five-step sequential test provided in the social security regulations. *See* 20 C.F.R. § 404.1520(a)-(g); *Bowen v. Yuckert*, 482 U.S. 137, 140-42 (1987); *Moore v. Colvin*, 769 F.3d 987, 988 (8th Cir. 2014). The five steps an ALJ must consider are:

> (1) whether the claimant is currently employed; (2) whether
> the claimant is severely impaired; (3) whether the impairment

is or approximates an impairment listed in Appendix 1;
(4) whether the claimant can perform past relevant work; and,
if not, (5) whether the claimant can perform any other kind of
work.

*Hill v. Colvin*, 753 F.3d 798, 800 (8th Cir. 2014); *see also* 20 C.F.R. § 404.1520(a)-(g). "If a claimant fails to meet the criteria at any step in the evaluation of disability, the process ends and the claimant is determined to be not disabled." *Pelkey v. Barnhart*, 433 F.3d 575, 577 (8th Cir. 2006).

In considering the steps in the five-step process, the ALJ:

first determines if the claimant engaged in substantial gainful activity. If so, the claimant is not disabled. Second, the ALJ determines whether the claimant has a severe medical impairment that has lasted, or is expected to last, at least 12 months. Third, the ALJ considers the severity of the impairment, specifically whether it meets or equals one of the listed impairments. If the ALJ finds a severe impairment that meets the duration requirement, and meets or equals a listed impairment, then the claimant is disabled. However, the fourth step asks whether the claimant has the residual functional capacity to do past relevant work. If so, the claimant is not disabled. Fifth, the ALJ determines whether the claimant can perform other jobs in the economy. If so, the claimant is not disabled.

*Kluesner v. Astrue*, 607 F.3d 533, 537 (8th Cir. 2010). At the fourth step, the claimant "'bears the burden of demonstrating an inability to return to [his] or her past relevant work.'" *Jones v. Astrue*, 619 F.3d 963, 971 (8th Cir. 2010). If the claimant meets this burden, the burden shifts to the Commissioner at step five to demonstrate that "'the claimant has the physical residual functional capacity to perform a significant number of other jobs in the national economy that are consistent with [his or] her impairments and vocational factors such as age, education, and work experience.'" *Phillips v. Astrue*, 671 F.3d 699, 702 (8th Cir. 2012). The RFC is the most an individual can do despite the combined effect of all of his or her credible limitations. 20 C.F.R. § 404.1545(a); *Toland*

*v. Colvin*, 761 F.3d 931, 935 (8th Cir. 2014). The ALJ bears the responsibility for determining "'a claimant's RFC based on all the relevant evidence, including the medical records, observations of treating physicians and others, and an individual's own description of [his or] her limitations.'" *Myers v. Colvin*, 721 F.3d 521, 527 (8th Cir. 2013); 20 C.F.R. § 404.1545.

The ALJ applied the first step of the analysis and determined Corwin had not engaged in substantial gainful activity since November 1, 2012. At the second step, the ALJ concluded from the medical evidence Corwin has the following severe impairments: mood disorder, anxiety disorder, left shoulder degenerative joint disease, and degenerative disc disease of the cervical spine with surgery. At the third step, the ALJ found Corwin did not have an impairment or combination of impairments listed in 20 C.F.R. Pt. 404, Subpt. P, App. 1. At the fourth step, the ALJ determined Corwin's RFC as follows:

> [Corwin] has the residual functional capacity to perform sedentary work . . . except she can stoop, kneel, crouch, or crawl occasionally. She cannot climb ladders, ropes, or scaffolds. Handing [(*sic*)] and fingering with the dominant left hand, she can engage in these activities frequently. She has no limits on her right side. Reaching overhead, she can do this with both arms frequently. She is limited to performing simple, routine and repetitive work with no close attention to detail and no use of independent judgment on the job.

(Administrative Record at 78.) Also at the fourth step, the ALJ determined Corwin is unable to perform her past relevant work. At the fifth step, the ALJ determined based on her age, education, previous work experience, and RFC, Corwin could work at jobs that exist in significant numbers in the national economy. Therefore, the ALJ concluded Corwin was not disabled.

### B. Objections Raised by Claimant

Corwin argues the ALJ erred in three respects. First, Corwin argues the ALJ failed to properly evaluate her subjective allegations of pain and disability. Second, Corwin

argues the ALJ failed to properly evaluate the opinions of Dr. Johnson, a consultative examining source. Lastly, Corwin argues that the ALJ's RFC assessment is flawed and not supported by substantial evidence.

### 1. *Credibility Determination*

Corwin argues that the ALJ failed to properly evaluate her subjective allegations of pain and disability. Corwin maintains that the ALJ's credibility determination is not supported by substantial evidence. The Commissioner argues that the ALJ properly considered Corwin's testimony, and properly evaluated the credibility of her subjective complaints.

When assessing a claimant's credibility, "[t]he [ALJ] must give full consideration to all the evidence presented relating to subjective complaints, including the claimant's prior work record, and observations by third parties and treating and examining physicians relating to such matters as: (1) the claimant's daily activities; (2) the duration, frequency, and intensity of the pain; (3) precipitating and aggravating factors; (4) dosage, effectiveness and side effects of medication; [and] (5) functional restrictions." *Polaski v. Heckler*, 739 F.2d 1320, 1322 (8th Cir. 1984). An ALJ should also consider a "a claimant's work history and the absence of objective medical evidence to support the claimant's complaints[.]" *Finch v. Astrue*, 547 F.3d 933, 935 (8th Cir. 2008) (citing *Wheeler v. Apfel*, 224 F.3d 891, 895 (8th Cir. 2000)). The ALJ, however, may not disregard a claimant's subjective complaints "'solely because the objective medical evidence does not fully support them.'" *Renstrom v. Astrue*, 680 F.3d 1057, 1066 (8th Cir. 2012) (quoting *Wiese v. Astrue*, 552 F.3d 728, 733 (8th Cir. 2009)).

Instead, an ALJ may discount a claimant's subjective complaints "if there are inconsistencies in the record as a whole." *Wildman*, 596 F.3d at 968; *see also Finch*, 547 F.3d at 935 (same); *Lowe v. Apfel*, 226 F.3d 969, 972 (8th Cir. 2000) ("The ALJ may not discount a claimant's complaints solely because they are not fully supported by the

11

objective medical evidence, but the complaints may be discounted based on inconsistencies in the record as a whole."). If an ALJ discounts a claimant's subjective complaints, he or she is required to "'make an express credibility determination, detailing the reasons for discounting the testimony, setting forth the inconsistencies, and discussing the Polaski factors.'" *Renstrom*, 680 F.3d at 1066 (quoting *Dipple v. Astrue*, 601 F.3d 833, 837 (8th Cir. 2010)); *see also Ford*, 518 F.3d at 982 (An ALJ is "required to 'detail the reasons for discrediting the testimony and set forth the inconsistencies found.' *Lewis v. Barnhart*, 353 F.3d 642, 647 (8th Cir. 2003)."). Where an ALJ seriously considers, but for good reason explicitly discredits a claimant's subjective complaints, the Court will not disturb the ALJ's credibility determination. *Johnson v. Apfel*, 240 F.3d 1145, 1148 (8th Cir. 2001) (citing *Pena v. Chater*, 76 F.3d 906, 908 (8th Cir. 1996)); *see also Schultz v. Astrue*, 479 F.3d 979, 983 (8th Cir. 2007) (providing that deference is given to an ALJ when the ALJ explicitly discredits a claimant's testimony and gives good reason for doing so); *Gregg v. Barnhart*, 354 F.3d 710, 714 (8th Cir. 2003) ("If an ALJ explicitly discredits the claimant's testimony and gives good reasons for doing so, we will normally defer to the ALJ's credibility determination."). "'The credibility of a claimant's subjective testimony is primarily for the ALJ to decide, not the courts.'" *Vossen v. Astrue*, 612 F.3d 1011, 1017 (8th Cir. 2010) (quoting *Pearsall v. Massanari*, 274 F.3d 1211, 1218 (8th Cir. 2001)).

In his decision, the ALJ generally determined that:

> After careful consideration of the evidence, the undersigned finds that [Corwin's] medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, [Corwin's] statements concerning the intensity, persistence and limiting effects of these symptoms are not credible for the reasons explained in this decision.

(Administrative Record at 81-82.) The ALJ further stated, again in general terms, Corwin "experiences some symptoms and limitations; however, the record does not fully support the severity of [her] allegations."[5]

In his decision, the ALJ sets forth the law for making a credibility determination under the Social Security Regulations.[6] The ALJ failed to apply the law, however, in determining the credibility of Corwin's testimony and subjective allegations. Specifically, the Court finds that the ALJ's decision lacks the required detail for discrediting a claimant and explaining the inconsistencies between the claimant's subjective allegations and the record as a whole. *See Renstrom*, 680 F.3d at 1066; *Ford*, 518 F.3d at 982; *see also Pelkey*, 433 F.3d at 578 (the ALJ must give reasons for discrediting a claimant). The ALJ offers nothing in terms of the *Polaski* factors and how those factors relate to Corwin's subjective testimony and credibility. The ALJ simply states that Corwin's "statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely credible[.]"[7] The ALJ's decision provides no reasons for discounting Corwin's testimony other than a single generic statement that the record does not support her allegations of pain and disability. *See Pelkey*, 433 F.3d at 578 (the ALJ must give reasons for discrediting a claimant). Because the ALJ's decision lacks any discussion of the reasons for discrediting Corwin, except that her allegations are not entirely credible, and lacks full consideration of *Polaski* or any of the *Polaski* factors, I believe remand is necessary for the ALJ to further develop the record with regard to Corwin's credibility. On remand, the ALJ should set forth in detail his reasons for finding Corwin's subjective allegations to be credible or not credible. If on remand, the ALJ finds Corwin's testimony not to be credible, the ALJ should fully explain the reasons for his credibility determination and

---

[5] Administrative Record at 82.

[6] *See id.* at 81.

[7] Administrative Record at 82.

13

fully explain the inconsistencies between Corwin's subjective allegations and the evidence in the record.

### 2. Dr. Johnson's Opinions

Corwin argues the ALJ failed to properly evaluate the opinions of Dr. Johnson, a consultative examining source. Contrary to the ALJ's understanding that Dr. Johnson was only a consultative examining source, Corwin argues Dr. Johnson was also a treating source. Corwin concedes that neither the ALJ, nor her attorney at the administrative hearing (Natalie Ratzlaff) were aware that Dr. Johnson was also a treating source.[8] Because both her attorney at the administrative hearing and the ALJ did not know Dr. Johnson was a treating source, Corwin contends that pertinent treatment records are missing from the administrative record, and the ALJ improperly evaluated Dr. Johnson as an examining source instead of as a treating source. Corwin seeks remand and asks the Court to require the ALJ to fully and fairly develop the record in this case by obtaining Dr. Johnson's treatment records for Corwin. Additionally, Corwin also implicitly argues that by improperly discounting Dr. Johnson's opinions, the ALJ's RFC assessment is flawed because it does not fully address her functional limitations and is not supported by substantial evidence. Corwin also concludes that this matter should be remanded for further development and consideration of the opinions of Dr. Johnson, and how Dr. Johnson's opinions relate to her RFC.

An ALJ is required to evaluate every medical opinion he or she receives from a claimant. 20 C.F.R. § 416.927(c). If the medical opinion is not from a treating source, then the ALJ considers the following factors for determining the weight to be given to the non-treating medical opinion: "(1) examining relationship, (2) treating relationship,

---

[8] In a Disability Report submitted to the Social Security Administration on May 13, 2013, Corwin listed Lorne Johnson as a treating source. The report indicates that Dr. Johnson provided Corwin with counseling and treatment for depression and anxiety. *See* Administrative Record at 306. According to the report, Corwin started treatment and counseling with Dr. Johnson on September 27, 2012. *Id.* Her last visit with Dr. Johnson was on May 7, 2013, and her next scheduled appointment was May 16, 2013. *Id.*

14

(3) supportability, (4) consistency, (5) specialization, and (6) other factors." *Wiese*, 552 F.3d at 731 (citing 20 C.F.R. §§ 404.1527(d)). "'It is the ALJ's function to resolve conflicts among the opinions of various treating and examining physicians. The ALJ may reject the conclusions of any medical expert, whether hired by the claimant or the government, if they are inconsistent with the record as a whole.'" *Wagner*, 499 F.3d at 848 (quoting *Pearsall v. Massanari*, 274 F.3d 1211, 1219 (8th Cir. 2001)).

In considering a physician's RFC assessment, an ALJ is not required to give controlling weight to the physician's assessment if it is inconsistent with other substantial evidence in the record. *Strongson*, 361 F.3d at 1070; *see also Travis v. Astrue*, 477 F.3d 1037, 1041 (8th Cir. 2007) ("A physician's statement that is 'not supported by diagnoses based on objective evidence' will not support a finding of disability. *Edwards v. Barnhart*, 314 F.3d 964, 967 (8th Cir. 2003). If the doctor's opinion is 'inconsistent with or contrary to the medical evidence as a whole, the ALJ can accord it less weight.' *Id.*"). "If the RFC assessment conflicts with an opinion from a medical source, the adjudicator must explain why the opinion was not adopted." Social Security Ruling, 96-8p (July 2, 1996).

In his decision, the ALJ thoroughly addressed Dr. Johnson's findings from the psychological evaluation performed on April 16, 2013.[9] The ALJ also addressed in detail Dr. Johnson's assessment of a GAF score of 47, finding only "partial" support in the record for such a score and granting it only "limited weight."[10] The ALJ also stated:

> Regarding the remainder of Dr. [Johnson's] opinions, some weight is given to the effect that [Corwin] has some problems with concentration. However, no weight is given to the opinion [she] has an impairment in social interaction and in using good judgment. There is nothing in the consultative

---

[9] See Administrative Record at 80.

[10] *Id.* at 80-81.

15

examination report that would suggest any limits at all in those areas. [Corwin] is able to respond to minimal changes that would arise in simple and repetitive work.

(Administrative Record at 81.)

On one hand, the ALJ's thorough discussion of Dr. Johnson's opinions and reasons for finding inconsistencies with his GAF score for Corwin, and inconsistencies with his opinions regarding Corwin's ability to interact socially, suggests the ALJ properly evaluated Dr. Johnson's opinions. On the other hand, the ALJ also gave "some" weight to Dr. Johnson's findings regarding her difficulties with concentration, but did not discuss or explain his reasoning further. This is significant because Dr. Johnson also opined Corwin "has a severe deficit in maintaining attention, concentration, and particularly pace."[11] Additionally, Dr. Johnson on Corwin's mental status examination found:

> She appeared to have low energy and low mood. She does not enjoy much in her life currently and has very little motivation. She states that she is not sleeping well, tending to be up all night. She has a very poor appetite. She is moderately irritable, has zero energy, and her self-esteem is diminishing. She reports that she cannot concentrate, not being able to remember what she has read.

(Administrative Record at 511.) The ALJ did not address any of these findings. Moreover, these findings are consistent with Corwin's subjective allegations of disability.[12] As discussed in section *V.B.1* of this decision, the ALJ failed to make a credibility determination in this case, and I recommended this matter should be remanded to allow a proper credibility determination to be made. Similarly, while the ALJ addressed some of Dr. Johnson's opinions, the ALJ did not fully address all of Dr. Johnson's opinions, especially his opinions on Corwin's concentration and fatigue, opinions the ALJ gave

---

[11] *Id.* at 511.

[12] *See* Administrative Record at 98; 100-03; 108-10 (discussing issues with fatigue, concentration, depression, and problems performing basic activities of daily living).

"some" weight without further explanation. *See Cox v. Astrue*, 495 F.3d 614, 618 (8th Cir. 2007) (providing that an ALJ has a duty to develop the record fully and fairly). Accordingly, I believe remand is warranted in this matter for further consideration of Dr. Johnson's opinions.

Additionally, because I am recommending this matter be remanded for further consideration of Dr. Johnson's opinions, I believe both Corwin's attorney and the ALJ should fully develop the record with regard to Dr. Johnson's treating relationship with Corwin. Based on the disability report contained in the record, it appears Dr. Johnson was not just a consultative examining source, but also a treating source.[13] Therefore, pertinent treatment records from Dr. Johnson should be included in the record on remand. *See Lott v. Colvin*, 772 F.3d 546, 549 (8th Cir. 2014) ("'Well-settled precedent confirms that the ALJ bears a responsibility to develop the record fairly and fully, independent of the claimant's burden to press his case.' *Snead v. Barnhart*, 360 F.3d 834, 838 (8th Cir. 2004).").

### 3. RFC Assessment

Corwin argues the ALJ's RFC assessment is flawed. Specifically, Corwin argues the ALJ's RFC assessment is not supported by substantial evidence. Corwin concludes this matter should be remanded for a new RFC determination based on a fully and fairly developed record.

When an ALJ determines that a claimant is not disabled, he or she concludes that the claimant retains the residual functional capacity to perform a significant number of other jobs in the national economy that are consistent with claimant's impairments and vocational factors such as age, education, and work experience. *Beckley*, 152 F.3d at 1059. The ALJ is responsible for assessing a claimant's RFC, and his or her assessment must be based on all of the relevant evidence. *Guilliams*, 393 F.3d at 803; *see also*

---

[13] *See* footnote 8.

*Roberts v. Apfel*, 222 F.3d 466, 469 (8th Cir. 2000) (same). Relevant evidence for determining a claimant's RFC includes "'medical records, observations of treating physicians and others, and an individual's own description of his [or her] limitations.'" *Lacroix v. Barnhart*, 465 F.3d 881, 887 (8th Cir. 2006) (quoting *Strongson*, 361 F.3d at 1070). While an ALJ must consider all of the relevant evidence when determining a claimant's RFC, "the RFC is ultimately a medical question that must find at least some support in the medical evidence of record." *Casey*, 503 F.3d at 697 (citing *Masterson v. Barnhart*, 363 F.3d 731, 738 (8th Cir. 2004)).

Additionally, an ALJ has a duty to develop the record fully and fairly. *Cox v. Astrue*, 495 F.3d 614, 618 (8th Cir. 2007); *Sneed v. Barnhart*, 360 F.3d 834, 838 (8th Cir. 2004); *Wilcutts v. Apfel*, 143 F.3d 1134, 1137 (8th Cir. 1998). Because an administrative hearing is a non-adversarial proceeding, the ALJ must develop the record fully and fairly in order that "'deserving claimants who apply for benefits receive justice.'" *Wilcutts*, 143 F.3d at 1138 (quoting *Battles v. Shalala*, 36 F.3d 43, 44 (8th Cir. 1994)); *see also Smith v. Barnhart*, 435 F.3d 926, 930 (8th Cir. 2006) ("A social security hearing is a non-adversarial proceeding, and the ALJ has a duty to fully develop the record."). "There is no bright line rule indicating when the Commissioner has or has not adequately developed the record; rather, such an assessment is made on a case-by-case basis." *Mouser v. Astrue*, 545 F.3d 634, 639 (8th Cir. 2008) (citation omitted).

In section *V.B.1*, I recommended remand was necessary because the ALJ failed to make a proper credibility determination in this matter. Additionally, in section *V.B.2*, I, again, recommended remand was necessary because the ALJ failed to fully and fairly develop the record with regard to the opinions of Dr. Johnson. Because the ALJ did not fully and fairly develop the record with regard to Corwin's credibility and medical source opinions, I believe the ALJ's RFC assessment is not based on all of the relevant evidence.

*See Guilliams*, 393 F.3d at 803. Accordingly, I recommend remand is necessary in order that the ALJ make his RFC assessment for Corwin based on all the relevant evidence.

## C. Reversal or Remand

The scope of review of the Commissioner's final decision is set forth in 42 U.S.C. § 405(g) which provides in pertinent part:

> The court shall have the power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Secretary, with or without remanding the cause for a rehearing.

42 U.S.C. § 405(g). The Eighth Circuit Court of Appeals has stated that:

> Where the total record is overwhelmingly in support of a finding of disability and the claimant has demonstrated his [or her] disability by medical evidence on the record as a whole, we find no need to remand.

*Gavin v. Heckler*, 811 F.2d 1195, 1201 (8th Cir. 1987); *see also Beeler v. Brown*, 833 F.2d 124, 127 (8th Cir. 1987) (finding reversal of denial of benefits was proper where "the total record overwhelmingly supports a finding of disability"); *Stephens v. Sec'y of Health, Educ., & Welfare*, 603 F.2d 36, 42 (8th Cir. 1979) (explaining that reversal of denial of benefits is justified where no substantial evidence exists to support a finding that the claimant is not disabled). In the present case, the Court concludes that the medical records as a whole do not "overwhelmingly support a finding of disability." *Beeler*, 833 F.2d at 127. Instead, the ALJ simply failed to: (1) properly evaluate Corwin's subjective allegations of pain and disability; (2) fully and fairly develop the record and properly consider the opinions of Dr. Johnson; and (3) base his determination of Corwin's RFC on all the relevant evidence. Accordingly, I recommend this matter be remanded for futher consideration.

## VI. CONCLUSION

I recommend that this matter should be remanded to the Commissioner for further proceedings. On remand, the ALJ should consider all of the evidence relating to Corwin's subjective allegations of disability, including the objective medical evidence and the opinions of Dr. Johnson. The ALJ should address his reasons for crediting or discrediting those allegations, particularly in light of his further consideration of the medical evidence in the record. Furthermore, the ALJ should make his RFC determination based on all the relevant evidence, again, including the opinions of Dr. Johnson, the objective medical evidence, and Corwin's own testimony regarding her pain and disability. Accordingly, I believe that this matter should be remanded for further proceedings as discussed herein.

## VII. RECOMMENDATION

For the reasons set forth above, I respectfully recommend that the district court **REVERSE** and **REMAND** this matter to the Commissioner of Social Security pursuant to sentence four of 42 U.S.C. § 405(g), for further proceedings as discussed herein.

The parties are advised, pursuant to 28 U.S.C. § 636(b)(1), that within fourteen (14) days after being served with a copy of this Report and Recommendation, any party may serve and file written objections with the district court.

DATED this 3rd day of November, 2016.

JON STUART SCOLES
CHIEF MAGISTRATE JUDGE
NORTHERN DISTRICT OF IOWA